

_____

No. 3:18-CV-590-CWR-FKB

MELVIN NEAL, JR.,

*Plaintiff,*

*v.*

HINDS COUNTY, MISSISSIPPI, ET AL.

*Defendants.*

_____

ORDER ON SUMMARY JUDGMENT

_____

Before CARLTON W. REEVES, *District Judge*.

Before the Court is a Motion for Summary Judgment filed by Defendants Hinds County, Sheriff Victor P. Mason, Lt. Anthony Simon, Sgt. Jamie Caston, and Sgt. John Scott. Docket No. 61. The matter is fully briefed and ready for adjudication.

After review, the motion will be granted in part and denied in part.[1]

## I.      Factual and Procedural History

This matter arises from an amended complaint that Plaintiff Melvin Neal, Jr. filed in February 2019. Neal alleges that in December 2017, while he was in custody and being transported by Hinds County between the Raymond Detention Center (RDC) and the Hinds County Work Center, he was brutally attacked by Defendants Lt. Anthony Simon, Sgt. Jamie Caston, and Sgt. John Scott, and thereafter denied medical treatment. Docket No. 21.

With the evidence now in, Neal and the Defendants have widely divergent accounts of what happened. Defendants claim that Neal had contraband—a chip bag with what appeared to be a "rolled up joint" in it, Docket No. 61 at 2-3—while Neal claims that he possessed no such contraband. Docket No. 65 at 3. Defendants insist that in the course of attempting to seize the contraband, Neal "punched at" one of them. Docket No. 61 at 4. Neal denies resisting at all. Docket No. 65 at 3. Defendants claim that they "asked" Neal to cease resisting, after which they employed a "strong muscle" technique to take "him to the ground" and then handcuff him. Docket No. 61 at 4. Defendants suggest that in the course of detaining Neal, he swallowed the purported contraband—another detail that Neal denies.

Neal claims that he was kicked in the right side of the head and face and that he "suffered clear and more than *de minimis*

---

[1] Defendants' Motion for Leave to File Excess Pages is also granted. Docket No. 67.

injuries . . . ." Docket No. 65 at 3-4. Defendants deny punching or kicking Neal, and even deny that he had any visible bruises or physical injuries. Docket No. 61 at 5. They go on to claim that even if Neal sustained such injuries, "such injuries are simply *de minimis* in nature . . . ." Docket No. 65 at 14.

Then there are the medical care claims. Defendants claim that Neal refused medical care at least twice.[2] Neal, however, claims that after seeing a jail nurse and receiving painkillers, he was never given any further medical treatment. He submits to this Court a transcription and copy of a handwritten nurse's note which appears to document extensive injuries he sustained as a result of the incident. *See* Docket No. 64 at 3; Docket No. 64, Exhibit 2. Neal was unable to produce the nurse who wrote the note, however, and cannot ascertain her whereabouts "despite multiple requests by Plaintiff." Docket No. 64 at 4.

In the litigation, this Court dismissed Neal's state law claims, Docket No. 39, but allowed the matter to proceed after granting in part and denying in part Defendants' motion for judgment on the pleadings. Docket No. 41. Discovery commenced on Neal's constitutional claims alleging excessive force and denial of medical treatment, arising under 42 U.S.C. § 1983. Defendants now come before this Court seeking summary judgment. Docket No. 61.

## II.    Legal Standard

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any

---

[2] It is not clear why someone who sustained no injuries would need to decline medical care twice.

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Ahders v. SEI Priv. Tr. Co.*, 982 F.3d 312, 315 (5th Cir. 2020) (citation omitted).

When considering such a motion, "the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009). Although a court should "consider all of the evidence in the record" at this stage, it must "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted). Ultimately, "summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Id.* (citation omitted).

### III.     Discussion

### A.     Exhaustion

In their motion, Defendants for the first time raised the argument that Neal had not exhausted the grievance process before filing suit in this Court, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. In an April 1 hearing, Defendants conceded that they failed to raise the defense in their answer to Neal's amended complaint. Defendants' tardiness in raising the argument results in waiver, as "the failure to exhaust administrative remedies is an affirmative defense and must generally be pled by defendants in order to serve as the basis for dismissal." *Herschberger v. Lumpkin*, No. 19-20481, 2021 WL 485794, at *3 (5th Cir. Feb. 9, 2021)

4

(citing *Carbe v. Lappin*, 492 F.3d 325, 327-28 (5th Cir. 2007); *Jones v. Block*, 549 U.S. 199, 216 (2007)).[3] The Court thus finds that Defendants waived their defense under the PLRA regarding exhaustion, and will continue onto the merits of the motion.[4]

## B.  Individual Capacity Claims

As with any case in which defendants raise a qualified immunity defense as to their individual liability, courts are bound by the principle that "[q]ualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (quotation marks and citation omitted).

---

[3] "Federal Rule of Civil Procedure 8(c) requires an affirmative defense to be set forth in a defendant's responsive pleading, with the failure to comply usually resulting in waiver of the defense." *Vanhoy v. United States*, 514 F.3d 447, 450 (5th Cir. 2008). A well-established exception to this general rule is if "a defendant raises the issue at a pragmatically sufficient time, and if the plaintiff is not prejudiced in its ability to respond, there is no waiver of the defense." *Id.* (quotation marks and citations omitted). The question of prejudice "considers whether the plaintiff had sufficient notice to prepare for and contest the defense." *Lee v. United States*, 765 F.3d 521, 525 (5th Cir. 2014) (citation omitted).

Waiting until summary judgment to raise the defense does prejudice Neal here, as exhaustion is a fact-intensive question—one that might be excused, for example, through a sufficient showing under certain facts—that could have been developed during discovery had Neal been on notice.

[4] In the April 1 hearing, Neal's counsel claimed that even if Defendants had not waived their defense, the PLRA is inapplicable to pretrial detainees. This is wrong. *See Moore v. St. Tammany Par. Jail*, 113 F. App'x 585, 586 (5th Cir. 2004).

The qualified-immunity analysis is familiar to this Court. *See, e.g., Jamison v. McClendon*, 476 F. Supp. 3d 386 (S.D. Miss. 2020). Although the two steps need not be taken in a particular order, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), "a court must [first] decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citations omitted).[5] The Fifth Circuit has elaborated on what is required to show that the issue was clearly established by stating that "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' This inquiry 'requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident.'" *Wilkerson v. Goodwin*, 774 F.3d 845, 851 (5th Cir. 2014) (citations omitted).

Notably, "a court may consider either condition first, and if either condition does not obtain," immunity follows, *Baldwin v. Dorsey*, 964 F.3d 320, 325 (5th Cir. 2020) (citation omitted), though "[i]f the plaintiff fails at either step, the federal court can grant qualified immunity by addressing either step or both of them." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (citations omitted).

---

[5] Although the trial court can skip straight to the second question concerning clearly established law, the Fifth Circuit has "repeatedly emphasized that there is value in addressing both questions 'to develop robust case law on the scope of constitutional rights.'" *Roque v. Harvel*, --- F.3d ---, 2021 WL 1220156, at *3 (5th Cir. Apr. 1, 2021) (citations omitted).

In Neal's case, there are two claims that would each independently constitute violations of the Constitution: excessive force and denial of medical care. This Court considers each in turn.

### 1.      Excessive Force

For the reasons below, although this Court finds that Neal has demonstrated a genuine factual dispute about whether he was subject to unconstitutionally excessive force, he fails to sufficiently demonstrate that the conduct at issue violated clearly established law.

### a.      Constitutional Violation

Viewing the facts in the light most favorable to Neal, as the Court must at this stage, Neal puts forward an account in which he was wantonly kicked and injured by officers and thereafter received minimal medical treatment despite the recommendations of a health care provider.

Both parties' briefs apply the Eighth Amendment to Neal's claims, and thus the Court accepts that the question before it is whether the Eighth Amendment was violated by the application of excessive force.[6] To analyze such a claim at the summary judgment stage, this Court must consider the factors set forth in *Hudson v. McMillan*. 503 U.S. 1 (1992). These are:

---

[6] At oral argument, Neal attempted to present new evidence that he was a pretrial detainee and, therefore, subject to the Fourteenth Amendment excessive force standard. The evidence to which Neal's counsel alluded is not before the Court, though, since it was not included in Neal's opposition to summary judgment and was not the subject of a motion to supplement the record. Regardless, the issue is moot because of the briefing failure at step two of the qualified immunity analysis.

> (1) the extent of [the] injury suffered, (2) the
> need for [the] application of force, (3) the rela-
> tionship between that need and the amount of
> force used, (4) the threat reasonably perceived
> by the responsible officials, and (5) any efforts
> made to temper the severity of a forceful re-
> sponse.

*Bourne v. Gunnels*, 921 F.3d 484, 491 (5th Cir. 2019) (quoting
*Hudson*, 503 U.S. at 7) (quotation marks omitted).

The factual dispute over the degree of Neal's injuries is
largely irrelevant to the question of excessive force, as the Su-
preme Court has clarified that "[a]n inmate need not establish
a 'significant injury' to pursue an excessive force claim be-
cause '[i]njury and force . . . are only imperfectly correlated,
and it is the latter that ultimately counts.'" *Id.* at 492 (citing
*Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010)).

In this regard, Neal has "demonstrated a genuine dispute of
material fact, namely, whether the force employed . . . was
used 'in a good faith effort to maintain or restore discipline or
maliciously and sadistically for the very purpose of causing
harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 6). There is a genuine
dispute in the record over whether the force deployed by De-
fendants was provoked by Neal's resistance, or, rather, was
unprovoked altogether. Upon review of the exhibits and fil-
ings in the light most favorable to Neal, this Court concludes
that Neal has demonstrated a genuine factual dispute about
whether he was subject to a good-faith effort to restore disci-
pline by Defendants or, rather, a malicious attack.

8

### b. Clearly Established Law

We now turn to the second prong of the qualified-immunity analysis. As the Fifth Circuit has held, "the dispositive question in this step of the qualified-immunity analysis is 'whether the violative nature of *particular* conduct is clearly established.' Cases that are 'too factually distinct to speak clearly to the specific circumstances here' are not enough to deny qualified immunity." *Cleveland*, 938 F.3d at 677 (citations omitted).

At the same time, however, the Supreme Court has made clear that "general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question . . . ." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see also Taylor*, 141 S. Ct. at 52 (citing *Hope*, 536 U.S. at 741, 745; *United States v. Lanier*, 520 U.S. 259, 271 (1997)). Notably, in light of this principle, the Supreme Court recently vacated and remanded a Fifth Circuit case, *McCoy v. Alamu*, which had held, among other things, that "[f]act-intensive balancing tests alone (such as the *Hudson* factors) are usually not 'clear' enough, because the illegality of the *particular conduct* at issue must be undebatable." 950 F.3d 226, 234 (5th Cir. 2020) (citations omitted), *cert. granted, judgment vacated*, No. 20-31, 2021 WL 666347 (U.S. Feb. 22, 2021).[7]

Even in light of the Supreme Court's vacatur of *McCoy*, the bar set by the "clearly established" prong remains high.

---

[7] This Court previously discussed the constraints that the Fifth Circuit's decision in *McCoy v. Alamu* imposed on litigants and courts. *See Jamison*, 476 F. Supp. 3d at 404 n.128, 406.

Courts need not search for relevant precedent to determine whether the law was clearly established, because "in the context of qualified immunity, it is the plaintiff's burden to establish that an allegedly violated right was clearly established." *Mayfield v. Currie*, 976 F.3d 482, 487 (5th Cir. 2020), *as revised* (Sept. 23, 2020). In other words, "[a] plaintiff must 'identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances was held to have violated the Constitution.'" *Roque v. Harvel*, --- F.3d ---, 2021 WL 1220156, at *5 (5th Cir. Apr. 1, 2021) (citation omitted).

Applying this rule, this Court must conclude that Neal has not carried the burden required of him. Neal's response in opposition to Defendants' motion and accompanying memorandum are devoid of any citations to caselaw that would satisfy the demands of this second prong, or any other arguments that might bear on this question.[8] Rather, in his responsive filings to the motion for summary judgment, Neal offers the conclusory statement that "[t]here is a jury question here." Docket No. 65 at 14.

While the undersigned has expressed his doubts about the constitutionality of qualified immunity, *see Jamison*, 476 F. Supp. 3d at 406, it remains true that "qualified immunity is the law of the land and the undersigned is bound to follow its terms absent a change in practice by the Supreme Court." *Id.* at 409. The clearly-established prong remains an integral part of this doctrine. As such, the Court must grant summary judgment on Neal's excessive-force individual-capacity claims.

---

[8] Rather, eight pages of Neal's response to summary judgment contain a verbatim copy of the undersigned's opinion in *Jamison v. McClendon*.

## 2.    Denial of Medical Care

We now turn to Neal's individual-capacity claim that he was denied medical care in violation of the Constitution. As with the excessive-force claim, both parties cite the Eighth Amendment or its concomitant standards, so this Court considers the claim under the Eighth Amendment. For the reasons below, this Court again concludes that Neal has demonstrated a genuine factual dispute over whether his Eighth Amendment rights were violated, but fails to sufficiently demonstrate that the conduct at issue violated clearly established law.

### a.    Constitutional Violation

To make out a violation of the Eighth Amendment in the context of a denial of medical care at the hands of prison officials, the Fifth Circuit has laid out the following steps:

> The prisoner "must first prove objective exposure to a substantial risk of serious harm"—in other words, the prisoner must prove a serious medical need. Second, the prisoner must prove the officials' subjective knowledge of this substantial risk. Third, the prisoner must prove that the officials, despite their actual knowledge of the substantial risk, denied or delayed the prisoner's medical treatment. Finally, the prisoner must prove that the delay in or denial of medical treatment resulted in substantial harm, such as suffering additional pain.

*Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019) (citations omitted).

Defendants first insist that Neal was not visibly injured, and thus they had no subjective knowledge that Neal required

11

medical attention. Neal, on the other hand, points to evidence that the nurse who later saw him documented obvious signs of injury, which in turn suggests that there is a genuine factual dispute as to whether Defendants actually possessed such subjective knowledge.

Additionally, there is a genuine factual dispute about whether there was a delay or denial of medical care. As one example of the intricacy of this dispute, Defendants claim that "[Neal] was so adamant that he did not require medical attention that he executed a 'Treatment Refusal Form' following the incident." Docket No. 62 at 18. And yet, a review of the form submitted by Defendants shows that Neal refused to sign the form, which indicates a dispute over whether or how Neal refused care. *See* Docket No. 62, Exhibit H. Neal claims, on the other hand, that "he requested treatment after the assault, that it was ordered by a doctor, but was specifically denied by Defendants." Docket No. 65 at 3. At the very least, thus, there is a factual dispute as to whether Neal in fact refused care, which would inform a determination as to whether officials delayed or denied medical treatment, as well as whether any delay or denial resulted in substantial harm and additional pain.[9]

---

[9] It is, in fact, possible that Neal *did* refuse treatment as Defendants suggest but then *later* received it. It is not clear from the evidence and filings, which is why the question remains a triable one, as it is material to the deliberate indifference analysis. As at least one additional example of where the evidence before the Court points to a material dispute over the timeline and facts surrounding Neal's medical care, Defendants have submitted a refusal form that Neal did *not* sign, *see* Docket No. 62, Exhibit H, which is different than the refusal form that Neal submitted, which he *did* sign. *See* Docket No. 64, Exhibit 17.

### b.  Clearly Established Law

The second prong of the qualified-immunity analysis remains the same. *See Petzold*, 946 F.3d at 255. And this Court must again come to the same conclusion as it did with respect to Neal's excessive force claim.

Neal may have raised a genuine issue of material fact as to whether he was subjected to deliberate indifference in violation of the Eighth Amendment, but a review of his filings illustrates a failure to point out how the conduct violated clearly established law. Neal points to no decisional law that applies with obvious clarity to his particular case, but rather focuses on the factual dispute about the nature of care he received.[10] In this regard, Neal fails to articulate an argument as to how this Court could determine that Defendants' conduct was not objectively reasonable and violated clearly established law.

For the foregoing reasons, the Court must grant qualified immunity to Defendants regarding the individual-capacity claims, and grant summary judgment accordingly.

### C.  Official Capacity Claims Against All Defendants

Finally, this Court must consider the claims against Defendants in their official capacities.

---

[10] Neal's reference to *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *see* Docket No. 65 at 16, is insufficient, as it merely recites the legal standard for showing deliberate indifference. Neal would have needed to focus on the facts of *Domino* in order to show that it is not one of the "[c]ases that are 'too factually distinct to speak clearly to the specific circumstances here.'" *Cleveland*, 938 F.3d at 677 (citations omitted).

Official-capacity claims against officers employed by local governments under 42 U.S.C. § 1983 are akin to claims against the local government itself. *See McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 785 n.2 (1997) ("[A] suit against a governmental officer in his official capacity is the same as a suit against [the] entity of which [the] officer is an agent"); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978). As such, all official capacity claims brought by Neal will be considered under the familiar *Monell* framework as if they are brought against Defendant Hinds County alone.[11]

In order to survive summary judgment under the *Monell* standard, "Plaintiffs must demonstrate that a question for trial remains as to whether 'action pursuant to official municipal policy caused their injury.'" *Hicks-Fields v. Harris Cty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017) (citation omitted). "Put differently, '[t]o establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.'" *Id.* (citation omitted).

For the reasons explained below, the Court must grant summary judgment on Neal's official-capacity claim concerning the denial of medical care, but denies summary judgment on his claim concerning excessive force.

---

[11] Municipalities such as Hinds County "may not be held liable under § 1983 on a basis of vicarious liability." *Hicks-Fields v. Harris Cty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017).

1.      **Excessive Force**

a.      **Policy or Custom**

The first prong of municipal liability can be met through the showing of an official policy or custom, or, in other words, by proving "official policy through practice." *Id.*

> Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. . . . Plaintiffs [alleging custom] must therefore demonstrate that there existed a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Plaintiffs must also establish actual or constructive knowledge of such custom by the municipality or the official who had policymaking authority.

*Id.* (quotation marks, citations, and brackets omitted).

Neal makes extensive reference to a Department of Justice report that came out over two years prior to his incident regarding the conditions at RDC. Such reports "may be especially relevant in *Monell* claims, where the plaintiff is burdened with demonstrating a systemic failing—'exactly what the

15

Department of Justice experts were looking for.'" *Id.* at 810 (citation omitted); *see also* Docket No. 64, Exhibit 7.[12]

On one hand, Neal's references to the report's findings concerning RDC alone are not entirely helpful. This is because even though Neal was housed at that facility, his incident happened at a different facility (the Hinds County Work Center), in the process of being *transferred from* RDC.[13]

---

[12] Defendant's counsel suggested in the April 1 hearing that such reports may not be competent evidence for this Court to consider. But as the Fifth Circuit makes clear, such reports may not be competent for the same reasons any other evidence might not be competent: "Depending on the nature of the report at issue and the specific circumstances of a particular case, such a report might not withstand scrutiny under other evidentiary rules." *Hicks-Fields*, 860 F.3d at 810 n.21.

Defendants make two arguments about the excludability of the report. One argument is that it is hearsay and the other is that it is prejudicial. *See* Docket No. 68 at 4-5.

Regarding the prejudice argument, this Court concludes that the report is not so prejudicial as to risk confusing the issues such that a jury will be misled. As discussed above, Neal establishes a sufficient argument as to the relevance of the report to the conditions at the work facility as applicable to Neal's particular claims.

Regarding hearsay, the Court also rejects Defendants' argument. Even if it were to find that the report contains inadmissible hearsay, the DOJ report is considered a public record under Federal Rule of Evidence 803(8). *See* Fed. R. Evid. 803(8). The report sets out "factual findings from a legally authorized investigation," *id.* 803(8)(A)(iii), as required in a civil proceeding such as this, and Defendants have not shown that there is a lack of trustworthiness in the report. *Id.* 803(8)(B).

[13] The DOJ report states that "[t]he Sheriff's Department also operates a Work Release Center next to the Raymond Facility. We did not specifically review conditions at the Work Release Center, because it is a distinct and separate minimum-security, state-county operation." Docket No. 64,

On the other hand, there is an alternative basis for why Neal's references to the report are sufficient to meet his "burden of showing a genuine dispute of material fact as to the existence of a 'persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Hicks-Fields*, 860 F.3d at 810-11 (citation omitted). It is the claim that Hinds County continued to employ unconstitutional customs in light of an outdated excessive force policy and notice from DOJ that such customs were inappropriate. As Neal states,

> It should be of note to this Court that the policies and procedures regarding use of force in place for Defendants at the time of this incident on December 28, 2017 and as testified to by Hinds County and former Sheriff Victor Mason himself were effective . . . The DOJ report . . . specifically found [that] Hinds County's Use of Force Policy was insufficient . . . .

Docket No. 65 at 21.

In this regard the DOJ report is relevant even though it focuses on a different facility. The report states that "[w]e found that the Jail [operated by Hinds County next to the work center where Neal's incident took place] does not have adequate . . . policies and training for officer use-of-force," Docket No. 64, Exhibit 7, at 13, and documents a pattern of abuse of force

---

Exhibit 7, at 3-4. According to the evidence before this Court, it was during intake at this work center where the incident occurred. *See, e.g.,* Docket No. 61, Exhibit C, at 16.

by officers.[14] Officers at the work facility undergo the same training as officers at the RDC. Docket 61, Exhibit C, at 11 (Lt. Simon stating "[w]e all – we're all one division. We just have three facilities."). Neal thus sufficiently raises the material issue as to whether—by the time of Neal's incident—officers at the Work Center still lacked sufficient training, staffing, and equipment under the same use-of-force policy and, as a result, continued to customarily misapply it. *See, e.g.*, Docket No 64, Exhibit 12 at 16 (Sheriff Victor Mason stating, in response to the question as to whether "if [officers] had more people [at the facility]" whether they would use force as often as they do in practice, that "I think if they had more people there, it would help, because, number one, the guys were outnumbered either way.").[15]

---

[14] Perhaps most relevant to Neal's claims are the report's references to officers responding with disproportionate force when provoked by inmates. Docket No. 64, Exhibit 7, at 14-15. That is, even though Neal raises a triable issue of material fact as to whether he provoked the incident in the first place, it is possible that officers' use of force was disproportionate even if Neal threw a punch.

As discussed above, though the report covers an adjacent facility and not the detention center itself, that officers undergo the same training at least raises the triable issue as to whether—after sufficient notice in light of the DOJ report—whether the customs described in the report endured.

[15] After a review of the DOJ report, moreover, and in light of the relationship established above regarding the two facilities, this Court concludes that for the purposes of summary judgment, some of the examples cited by the DOJ do "resemble—with sufficient similarity—the constitutional violations alleged by Plaintiffs so as to establish the required pattern of that unconstitutional conduct." *Hicks-Fields*, 860 F.3d at 810. *Compare* Docket No. 64, Exhibit 7 at 13 ("Our consultant examined dozens of incident reports . . . and could not find any in which the supervisor even indicated agreement, disagreement, or a need for follow up action."), *with*

For these reasons, the Court concludes that Neal has satisfied this first prong of the *Monell* analysis.

### b.      Policymaker's Knowledge

"If a custom is alleged, 'actual or constructive knowledge of such custom' must be attributable to the governing body or to someone else to whom policy-making authority was delegated." *K.B. v. Adams*, 480 F. Supp. 3d 746, 756 (S.D. Miss. 2020) (citing *Angel v. La Joya Indep. Sch. Dist.*, 717 F. App'x 372, 378 (5th Cir. 2017)). A "policymaker," in turn, "is someone who is responsible 'for making law or setting policy in any given area of a local government's business.'" *Id.* at 755 (quoting *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010)).

This prong is easily satisfied here. Neal interviewed Sheriff Victor Mason, who acknowledged in his deposition his responsibility for setting policy for the facility where the incident at issue took place. *See* Docket No 64, Exhibit 12, at 7-8. Constructive knowledge may be established "where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984). By pointing out the Sheriff's knowledge of the DOJ report and his subsequent discussion of it for the purposes of policy and custom that would affect individuals in Neal's position at the work facility, *see* Docket No. 64, Exhibit 12, Neal sufficiently shows that the Sheriff possessed the requisite knowledge.

---

Docket No. 64, Exhibit 10 (use of force report in Neal's case that merely describes Neal's complaint about injuries).

### c.      Moving Force

Finally, "[i]n addition to culpability, there must be a direct causal link between the municipal policy and the constitutional deprivation. *Monell* describes the high threshold of proof by stating that the policy must be the 'moving force' behind the violation." *Piotrowski v. City of Hous.*, 237 F.3d 567, 580 (5th Cir. 2001) (citations omitted). "Plaintiffs must establish both the 'causal link (moving force) and the City's degree of culpability (deliberate indifference to federally protected rights).'" *K.B.*, 480 F. Supp. 3d at 758 (quoting *Piotrowski*, 237 F.3d at 580).

Upon review of the record, this Court concludes that for the purposes of summary judgment, Neal has sufficiently established a material dispute as to whether Hinds County's custom of excessive force was the moving force behind the injuries he sustained. His argument that facilities were understaffed and lacked sufficient equipment, on top of shortcomings in training and certification that thereby exacerbated officers' propensity for the use of force—all of which is substantiated by the evidence before this Court—is sufficient to establish the required causal connection.

### 2.      Denial of Medical Care

Unlike the excessive force official-capacity claim above, this Court must grant summary judgment with respect to Neal's denial of medical care official-capacity claim. Neal fails to point to a policy or custom, let alone the remaining elements required under *Monell*, that would suffice to survive summary judgment for this claim. Rather, the entirety of Neal's argument as it pertains to the *Monell* analysis bears solely on the excessive-force claim.

For the foregoing reasons, this Court grants summary judgment on the official-capacity claims concerning denial of medical care.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. The Court grants summary judgment with respect to all individual-capacity claims. Similarly, the Court grants summary judgment on all official-capacity claims relating to the denial of medical care. However, summary judgment is denied with respect to the official-capacity excessive force claim, and thus on this matter alone, Neal may proceed to trial.

**SO ORDERED**, this the 6th day of April, 2021.

s/ CARLTON W. REEVES
*United States District Judge*